**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Lamont A. HOWARD, Defendant–Appellant.**

#### No. 01CA2465.

Colorado Court of Appeals, Div. II.

July 31, 2003.

Rehearing Denied Oct. 9, 2003.

Certiorari Denied May 10, 2004.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2002.

Ken Salazar, Attorney General, Karen E. Lorenz, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Elisabeth Hunt White, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge WEBB.

Defendant, Lamont A. Howard, appeals the judgment of conviction entered on a jury verdict finding him guilty of second degree assault, a class four felony in violation of § 18–3–203(1)(g), C.R.S.2002, and third degree assault, a class one misdemeanor in violation of § 18–3–204, C.R.S.2002, both for biting one victim, and of third degree assault for striking another victim. The trial court sentenced defendant to six years in the Department of Corrections on the felony, with the sentences on the two misdemeanor convictions to run concurrently.

Defendant alleges insufficiency of the evidence of specific intent to cause serious bodily injury, error for failure to instruct on provocation, and failure to merge the second and third degree assault convictions. We remand for correction of the mittimus, but otherwise disagree and therefore affirm.

A homeowner found defendant in his front yard, unconscious and bleeding, and took him to a hospital. Once there defendant said he did not want treatment and remained in the homeowner's car. The police were called. Defendant then told an officer that he might have overdosed and accompanied the officer into the emergency room. However, upon questioning by a nurse, he became agitated and defensive, told the hospital staff not to touch him, and demanded to be released.

Nevertheless, he was wheeled into a trauma room and placed on a bed for examination. He struggled and multiple staff members sought to restrain him. A private security guard applied a painful "compliance hold" under his jaw. When she released this hold, he turned his head and bit off the tip of her finger. During the struggle, he also struck a nurse who was attempting to insert an intravenous needle.

A test of defendant's blood revealed a high level of an anti-epileptic prescription medication, an alcohol level of .258, and cocaine.

## I.

■ Defendant first argues that, because of his drug and alcohol intoxication, the evidence of specific intent for the second degree assault conviction was insufficient. We disagree.

In reviewing a challenge to the sufficiency of the evidence, we consider the evidence in the light most favorable to the People, giving the People the benefit of every reasonable inference that might be drawn from the evidence. *Kogan v. People*, 756 P.2d 945 (Colo. 1988); *People v. Martinez*, 36 P.3d 154 (Colo. App.2001).

■ Second degree assault under § 18–3–203(1)(g) requires specific intent to cause bodily injury. Specific intent may be inferred from a defendant's conduct and the overall circumstances. *People v. White*, 191 Colo. 353, 553 P.2d 68 (1976). The jury decides whether intoxication precludes formation of the requisite specific intent. *People v. White, supra.*

Here, the parties presented conflicting evidence concerning defendant's mental state. Viewed in the light most favorable to the People, the record includes testimony that although visibly intoxicated, defendant seemed capable of making decisions, was neither confused nor disoriented, had control over his body, and was clear in his speech. The jury could disregard testimony of defendant's expert concerning the likely effect of his intoxication. *See Thiele v. State*, 30 Colo. App. 491, 495 P.2d 558 (1972).

Accordingly, we discern sufficient evidence of specific intent to sustain the guilty verdict on second degree assault.

## II.

Defendant next contends that, because he was being restrained against his will and subjected to a painful compliance hold, the trial court should have instructed the jury on provocation. In summation, defense counsel argued that defendant was only trying to defend himself, but did not request a provocation instruction. Defendant now asserts that under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), provocation must be treated as an element of second degree assault, and therefore the lack of a provocation instruction must be reviewed for constitutional harmless error. We do not agree with defendant's application of *Apprendi*. Therefore, we review for plain error, and we find none.

## A.

We reject defendant's contention that *Apprendi* requires us to apply constitutional harmless error review.

Under the second degree assault statute, unless the act causing injury is done in "a sudden heat of passion, caused by a serious and highly provoking act of the intended victim, affecting the person causing the injury sufficiently to excite an irresistible passion in a reasonable person," the offense is a class four felony. Section 18–3–203(2)(b), C.R.S. 2002. If provocation is at issue and the People fail to establish lack of provocation, then second degree assault is a class six felony. Section 18–3–203(2)(a), C.R.S.2002.

Presumptive sentences for class six felonies range from one year to eighteen months in prison, while sentences for class four felonies run from four to six years. Section 18–1.3–401(1)(a)(V)(A), C.R.S.2002.

The supreme court has not expressly addressed the provocation clause in the second degree assault statute, but has interpreted identical language in the first degree assault statute, § 18–3–202(2)(b), C.R.S.2002. *Rowe v. People*, 856 P.2d 486 (Colo.1993). This identical language was added to both statutes in the same session of the General Assembly. Hence, we perceive no reason to interpret the two sections differently. *See People v. Suazo*, 867 P.2d 161 (Colo.App.1993)(applying *Rowe* to the former § 18–3–209, which cross-referenced the second degree assault statute).

In *Rowe*, the supreme court concluded that the provocation language in § 18–3–202(2)(b) is a sentence mitigating factor which does not involve an element of the offense, give rise to

an affirmative defense, or create a separate offense. In *People v. Garcia*, 28 P.3d 340 (Colo.2001), the supreme court expressly rejected the argument that unpreserved error in failing to instruct on provocation was subject to constitutional harmless error review.

■ Nevertheless, defendant argues that even if provocation is not an element, it operates in the same manner as a statutory penalty enhancer because both involve factual determinations that influence the penalty. Therefore, according to defendant, under *Apprendi*—which was announced after *Rowe* and not cited in *Garcia*—provocation must be determined by the jury. Assuming, without deciding, that an unpreserved *Apprendi* violation would require constitutional harmless error review, we are not persuaded that provocation operates as a penalty enhancer.

*Apprendi* held that any fact which increases the range of punishment beyond the statutory maximum, other than that of a prior conviction, must be treated as an element of the offense and determined by a jury. *See People v. Martinez*, 32 P.3d 520 (Colo.App. 2001).

However, divisions of this court have repeatedly distinguished *Apprendi* where the mere fact of conviction exposes a defendant to a range within which the defendant is sentenced. *See, e.g., People v. Rivera*, 62 P.3d 1056 (Colo.App.2002); *People v. Allen*, 43 P.3d 689 (Colo.App.2001).

■ When applying *Apprendi*, "the label which the legislature applies to the fact— sentencing factor or element—is irrelevant because inquiry properly focuses on effect, not form." *Woldt v. People*, 64 P.3d 256, 263 (Colo.2003). *See also Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).

Accordingly, we eschew the labels used in *Rowe v. People, supra*, and focus instead on whether provocation is a fact that impermissibly increases punishment unless determined by the jury, as in *Apprendi*, or that allows sentencing in a range to which the defendant is already subject, as in *Allen*. We conclude that provocation does not increase punishment.

■ Under the second degree assault statute, the jury must be instructed on provocation if some evidence supports it and the defendant requests the instruction. *People v. Lee*, 30 P.3d 686 (Colo.App.2000). Where the instruction is proper, *if* the jury finds the defendant guilty, *then* the jury considers whether the People proved lack of provocation. The sequence of proof is described in the following pattern instruction applicable to first and second degree assault:

> If you find the defendant not guilty of [a count of first, or second degree assault], you need not consider this instruction. *If however, you find the defendant guilty of [that count], you must then consider the issue of provocation.*
>
> The evidence in this case has raised the issue of provocation. Provocation means that the defendant's acts were performed, not after deliberation, but upon a sudden heat of passion caused by a serious and highly provoking act of the intended victim which affected the defendant sufficiently to excite such an irresistible passion in a reasonable person.
>
> It is the burden of the prosecution to prove beyond a reasonable doubt a lack of provocation for the defendant's acts.

CJI–Crim. 10:20 (1983)(emphasis supplied).

In *Rowe v. People, supra*, 856 P.2d at 490, the court cited with approval CJI–Crim. 10:20, pointing out that the instruction treats provocation as "an issue the jury must consider once it has found a defendant guilty." *See also People v. Garcia, supra*, 28 P.3d at 345 ("Thus, we conclude that the General Assembly intended for a jury to consider the issue of provocation after determining that a defendant is guilty of second-degree murder.").

The sequence in which the jury considers provocation distinguishes *Apprendi* for reasons articulated in *Allen* and its progeny: before the jury could consider provocation, it must already have determined that the defendant was guilty of the greater felony, and thereby was subject to the higher sentencing range for a class four felony. Thus, unlike *Apprendi*, the jury's factual determination on provocation cannot increase the potential sentence. Hence, defendant has not estab-

lished a basis for constitution harmless error review.

Accordingly, we conclude that failure of the trial court sua sponte to instruct the jury on provocation is subject to plain error review. *See People v. Garcia, supra; cf. People v. Sepulveda,* 65 P.3d 1002 (Colo.2003)(generally endorsing plain error review of unpreserved instructional error).

### B.

■ Nevertheless, defendant asserts that the lack of a provocation, or "heat of passion," instruction was plain error. Again, we disagree.

■ "Failure to instruct the jury properly does not constitute plain error where the subject of the error in the instruction is not contested at trial, or where evidence of the defendant's guilt is overwhelming." *Bogdanov v. People,* 941 P.2d 247, 255 (Colo.1997).

Here, in summation defense counsel asserted that defendant was only protecting himself, thereby arguably precluding application of the first prong of *Bogdanov* to defendant's provocation argument. Hence, we turn to the second prong of *Bogdanov,* and consider whether the evidence, even if it warranted the provocation instruction for which defendant now argues, suffices to cast doubt on the reliability of the conviction. We conclude that it does not.

■ "Heat of passion is a legal theory that recognizes that sometimes circumstances conspire to cause even a reasonable person to react passionately and violently." *People v. Ramirez,* 56 P.3d 89, 94 (Colo.2002)(interpreting similar language in § 18–3–103(3)(b), C.R.S.2002). Heat of passion involves both subjective and objective considerations: first, the defendant must have responded to the victim's "serious and highly provoking act"; second, the victim's act must have been "sufficient[ ] to excite an irresistible passion in a reasonable person." Section 18–3–203(2)(a), C.R.S.2002.

■ However, "the only reading of 'reasonable person' that harmonizes and gives sensible effect to all of the statute's provisions is one that interprets the term to mean an objectively reasonable individual and not a subjectively reasonable one possessing the individual defendant's personality traits or defects." *People v. Dooley,* 944 P.2d 590, 594 (Colo.App.1997)(interpreting similar language in § 18–3–104(1)(c), C.R.S.2002); *see also Lanari v. People,* 827 P.2d 495 (Colo. 1992).

Here, even assuming defendant acted in the subjective belief of defending himself, the evidence does not show that a reasonable person in his position would have done so. After defendant accompanied the officer into the emergency room, the hospital personnel did nothing that would have led a reasonable person to revoke consent to treatment. Under these circumstances, a reasonable person in defendant's position would have cooperated with the medical personnel as they attempted to examine and treat him under the exigent circumstances of a potential drug overdose.

Accordingly, we conclude that failure to give a provocation instruction was not plain error.

### III.

■ Defendant next argues that the trial court erred in the final paragraph of the second degree assault elements instruction, which directed the jury to acquit "if you decide the prosecution has failed to prove *each of the elements* beyond a reasonable doubt" (emphasis supplied). According to defendant, the jury was effectively instructed that it could acquit him only if the People failed to prove all of the elements. We do not agree.

Defendant did not raise this issue before the trial court, and as a result we again review for plain error. *See* Crim. P. 52(b).

Defendant concedes this argument was rejected in *People v. Freeman,* 739 P.2d 856 (Colo.App.1987). However, he contends the division there relied on CJI–Crim. 9:01 and 9:02 (1983), the pattern elemental instructions have since changed, and they now provide that a defendant should be acquitted if the People failed to prove "any one or more" of the elements. *See, e.g.,* CJI–Crim. 10:12 (Supp.1993)(instruction for second degree assault while confined). We are not persuaded.

Since the 1993 amendment to these instructions, divisions of this court have reject-

ed this argument. *See, e.g., People v. Orne-las*, 937 P.2d 867 (Colo.App.1996); *People v. Watson*, 892 P.2d 388 (Colo.App.1994).

■ Moreover, despite a departure from pattern instructions, no error results if the instructions, taken together, accurately inform the jury of the law. *People v. Sherman*, 45 P.3d 774 (Colo.App.2001).

Here, the standard burden of proof instruction told the jury to find defendant guilty if "each and every element has been proven beyond a reasonable doubt" and to find him not guilty if "the prosecution has failed to prove any one or more of the elements." Hence, the instructions as a whole adequately informed the jury that the People's burden involved every element.

Accordingly, while the "any one or more" phraseology may be the better practice, we discern no plain error.

### IV.

■ Finally, defendant asserts that the conviction of third degree assault involving the security guard should be struck, because third degree assault is a lesser included offense of second degree assault. The People concede that the conviction of third degree assault should merge into the conviction of second degree assault. We agree. *See Armintrout v. People*, 864 P.2d 576 (Colo.1993)(merger); *People v. Thompson*, 187 Colo. 252, 529 P.2d 1314 (1975)(lesser included offense).

Accordingly, on remand the conviction and sentence on this charge should be vacated.

The judgment is affirmed in part, and the case is remanded for correction of the mittimus.

Judge NEY and Judge PIERCE * concur.