**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Erik Scott O'CONNELL, Defendant–Appellant.**

**No. 03CA1702.**

Colorado Court of Appeals,
Div. IV.

Nov. 17, 2005.

Rehearing Denied March 30, 2006.

John W. Suthers, Attorney General, Katherine A. Hansen, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Jean E. Dubofsky, P.C., Jean E. Dubofsky, Boulder, Colorado; Craig L. Truman, P.C., Craig L. Truman, Denver, Colorado; Burke & Neuwirth, P.C., Dean S. Neuwirth, Denver, Colorado, for Defendant–Appellant.

ROY, J.

Defendant, Erik Scott O'Connell, appeals the judgment of conviction entered on a jury verdict finding him guilty of attempted sexual assault on a child and second degree burglary with intent to commit attempted sexual assault on a child. He also appeals the sentences imposed. We affirm.

Defendant, a college student, had a serious drinking problem commencing in high school. While attending college, defendant became a binge drinker and frequently consumed alcohol to the point where he blacked out, passed out, or became nauseated.

Prior to the events in question, defendant had been convicted of an alcohol driving offense, which resulted in the suspension of his driver's license. Nevertheless, defendant continued to drive and, after an accident, was convicted of driving under revocation, for which he was sentenced to probation and ordered to pay restitution. When he became delinquent in paying restitution, defendant embezzled from his employer, was charged and convicted of felony theft, and was again sentenced to probation. He was on probation at the time of the events here at issue.

On the night in question, defendant went bar hopping in a limousine with his friends. Defendant drank at the bars and in the limousine before, between, and after visiting the bars. Toward the end of the evening, the limousine took defendant and his friends to a private party in a neighborhood with which defendant was unfamiliar. Defendant continued to drink on the way to the party and fell as he tried to exit the limousine. His friends sat him up, left him on the curb, and went to the party. Defendant estimated that he consumed fourteen to fifteen drinks at the bars and testified that he had little memory of the events that transpired after he left the last bar.

After having been left by his friends, defendant wandered into the backyard of a nearby house, opened an unlocked sliding window, and entered. Defendant's girlfriend frequently left the back door of her residence unlocked, and, when defendant was intoxicated, he would enter her home and fall into her bed. This habit evidence was admitted to show that defendant may have been confused because of his highly intoxicated state.

As he entered the kitchen, defendant found a wallet on the kitchen counter and placed it in his pants pocket. He made his way upstairs and entered the bedroom of a nine-year-old girl (the victim).

The victim awoke to discover her pajama pants around her ankles but her underwear undisturbed. Defendant then began licking her forehead. Too scared to act, the victim remained silent. Defendant then hit his head on the headboard, which awakened the victim's father in the nearby master bedroom.

The father came to the victim's bedroom to investigate and found defendant naked from the waist down lying on top of the covers next to the victim. The father grabbed defendant by the throat and wrestled him to the floor while his wife came and removed the victim from the room and called the police.

Subsequently, defendant was charged with first degree burglary with theft and sexual assault on a child as the underlying offenses and assault and menacing upon the father as an aggravator, second degree burglary with the same underlying offenses, attempted sexual assault on a child, third degree assault with the father as victim, and theft (of wallet) with the mother as the victim. After trial to a jury, defendant was convicted of attempted sexual assault on a child and second degree burglary predicated on that offense and was sentenced to ten years with the Department of Corrections (DOC) for burglary and two years in the DOC for attempted sexual assault, to be served consecutively.

This appeal followed.

## I.

■ Defendant contends that the trial court erred in failing to instruct the jury that intoxication can negate the specific intent required for sexual assault on a child or attempted sexual assault on a child. We conclude that any error is not plain.

### A.

■ Initially, we consider and reject the People's argument that defendant's contention is waived under the doctrine of invited error. After the court rejected defendant's proposal to add a sentence to the instruction on voluntary intoxication, defendant said the content of the proposed instruction was acceptable. The record shows that defendant made this statement not to gain strategic advantage from the absence of language regarding sexual assault, but merely because he did not note its absence. Under these circumstances, we conclude that defendant did not invite error, but that he did not object to the error he now asserts. Therefore, we review for plain error. *See* Crim. P. 52(b); *People v. Stewart,* 55 P.3d 107 (Colo. 2002).

### B.

■ A defendant may offer evidence of voluntary intoxication when "it is relevant to negative the existence of a specific intent if such intent is an element of the crime charged." Section 18–1–804(1), C.R.S.2005. A person acts with this intent when "his conscious objective is to cause the specific result proscribed by the statute defining the offense." Section 18–1–501(5), C.R.S.2005. Voluntary intoxication is not an affirmative defense that negates the criminal act. *People v. Harlan,* 8 P.3d 448 (Colo.2000).

Sexual assault on a child occurs if "[a]ny actor … knowingly subjects another not his or her spouse to any sexual contact … if the victim is less than fifteen years of age and the actor is at least four years older than the victim." Section 18–3–405(1), C.R.S.2005. "Sexual contact," in turn, is defined as "the knowing touching of the victim's intimate parts by the actor … if that sexual contact is for the purposes of sexual arousal, gratifi-

cation, or abuse." Section 18–3–401(4), C.R.S.2005.

■ The specified mens rea for sexual assault on a child is "knowingly," which makes the offense a general intent crime, and voluntary intoxication is not a consideration in determining mens rea. However, in *People v. Moore,* 877 P.2d 840, 847 (Colo.1994), our supreme court indicated, without holding, that sexual assault on a child had a dual mens rea because of the definition of "sexual contact." The court stated that the "culpable mental state required for the commission of sexual assault on a child is knowing touching that is *specifically intended* to be for the purposes of sexual arousal, gratification, or abuse." *People v. Moore, supra,* 877 P.2d at 847 (emphasis added; footnote omitted).

As applicable in *Moore,* the definition of "sexual contact" contained the phrase "if that sexual contact *can reasonably be construed as being* for the purposes of sexual arousal, gratification, or abuse." Colo. Sess. Laws 1975, ch. 171, § 18–3–401(4) at 627 (emphasis added). The current statute, as amended in 1993, substitutes "is" for the emphasized words.

The *Moore* court relied in part on *People v. West,* 724 P.2d 623, 628 (Colo.1986), which dealt with a challenge to the constitutionality of the definition of "sexual contact." The definition then required an intentional touching but contained the phrase "can reasonably be construed as being for the purpose of sexual arousal, gratification or abuse," and the defendant in *West* argued that the latter phrase was vague and overbroad. The court essentially wrote the phrase "can reasonably be construed as being" out of the statute as to the purpose of the touching and substituted "was" in its stead.

■ In *People v. Vigil,* 104 P.3d 258 (Colo. App.2004) (*cert. granted* Dec. 20, 2004), which was decided subsequent to defendant's trial, a division of this court, relying on the quoted language in *Moore* as to the culpable mental state, held that intoxication is relevant to the issue of whether the defendant could have formed the requisite specific intent for sexual assault on a child. We note that the supreme court granted certiorari in *People v.*

*Vigil, supra,* on this issue. Attempted sexual assault on a child encompasses the same mens rea as the crime of sexual assault on a child. *See Palmer v. People,* 964 P.2d 524 (Colo.1998).

The United States Supreme Court, in *United States v. Olano,* 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), discussed Fed.R.Crim.P. 52(b) and plain error at some length in the context of a jury deliberations issue. The court indicated that a trial error to which no objection is made is forfeited and therefore not reviewable. However, such errors can be reviewed for plain error, which means an error must be plain, and it must affect a substantial right of a party. With respect to the requirement that the error must be plain, the court stated:

> The second limitation on appellate authority under Rule 52(b) is that the error be "plain." "Plain" is synonymous with "clear" or, equivalently, "obvious." We need not consider the special case where the error was unclear at the time of trial but becomes clear on appeal because the applicable law has been clarified. At a minimum, [the] court of appeals cannot correct an error pursuant to Rule 52(b) unless the error is clear under current law.

*United States v. Olano, supra,* 507 U.S. at 734, 113 S.Ct. at 1777 (citations omitted). Fed.R.Crim.P. 52(b) and our rule Colo.Crim. P. 52(b) are identical. We are persuaded by the United States Supreme Court's construction and application of Fed.R.Crim.P. 52(b) and apply it to Colo.Crim. P. 52(b).

Because *Vigil* was decided after defendant's trial, we need to consider the "special case" scenario that was mentioned, but not addressed, in *Olano.*

■ It is well established that "[w]here the law at the time of trial was settled and clearly contrary to the law at the time of appeal[,] it is enough that an error be 'plain' at the time of appellate consideration." *Johnson v. United States,* 520 U.S. 461, 468, 117 S.Ct. 1544, 1549, 137 L.Ed.2d 718 (1997).

However, the Supreme Court has not considered the situation in which the law was unsettled at the time of trial, and is clarified by later authority prior to, or during, the

appeal. Under the approach of the Fourth, Fifth, Ninth, and D.C. Circuits, if the law was unsettled at the time of trial the plain error analysis will be conducted using the status of the law at the time of trial. *United States v. Turman,* 122 F.3d 1167 (9th Cir. 1997); *see United States v. Dupaquier,* 74 F.3d 615 (5th Cir.1996); *United States v. David,* 83 F.3d 638 (4th Cir.1996); *United States v. Washington,* 12 F.3d 1128 (D.C.Cir. 1994); *United States v. Calverley,* 37 F.3d 160 (5th Cir.1994). As the division stated in *Turman,*

> Plain error, as we understand that term, is error that is so clear-cut, so obvious, a competent district judge should be able to avoid it without benefit of objection. *See United States v. Frady,* 456 U.S. 152, 163, 102 S.Ct. 1584, 1591, 71 L.Ed.2d 816 (1982) (error is plain only if trial judge is "derelict in countenancing it"). When the state of the law is unclear at trial and only becomes clear as a result of later authority, the district court's error is perforce not plain; we expect district judges to be knowledgeable, not clairvoyant. When the law is such that an experienced district judge cannot be expected to detect the error on his own, that is precisely when it is most important for the parties to object. An objection affords the judge an opportunity to focus on the issue and hopefully avoid the error, thereby saving the time and expense of an appeal and retrial. We thus conclude that plain error, as that term is used in Fed. R.Crim. 52(b), normally means error plain at the time the district court made the alleged mistake.
>
> . . . .
>
> We conclude ... that where an objection at trial would not have been futile, an error is not plain unless it would have been obvious to a reasonably competent district judge at the time of trial. If the district judge would have had to be clairvoyant to detect the error (perhaps by foreseeing yet undecided court of appeals or Supreme Court caselaw) the error is not plain and defendant must object as a condition for having it considered on appeal.

*United States v. Turman, supra,* 122 F.3d at 1170–71. These cases also reason that a

contrary view would lead counsel to make objections at trial because he or she could never be certain whether the law would be the same on appeal.

In a now vacated decision, the Eleventh Circuit has taken the opposite view. *United States v. Smith,* 402 F.3d 1303 (11th Cir. 2005), *vacated,* — U.S. ——, 125 S.Ct. 2938, 162 L.Ed.2d 863 (2005). Its rationale was that reviewing for plain error using the law as it exists on appeal avoids "the necessity of distinguishing between cases in which 'the law at the time of trial was settled and clearly contrary to the law at the time of appeal' on the one hand and the cases in which it was merely 'unsettled' on the other." *United States v. Smith, supra,* 402 F.3d at 1315 n. 7 (quoting *Johnson v. United States, supra,* 520 U.S. at 468, 117 S.Ct. at 1549). The difficulty in distinguishing between the two is greater in the federal system because it has multiple circuits, which, on occasion, disagree. We do not suffer from that infirmity except, of course, when divisions of this court disagree.

■ We agree with the rationale of the Fourth, Fifth, Ninth, and D.C. Circuits. Therefore, we will use the status of law at the time of trial in considering whether the trial court committed plain error.

■ For an error to be "plain" it must be "obvious." "Obvious" is defined as "so placed as to easily or inevitably [be] perceived or noticed," "capable of easy perception," "readily perceived by the senses," "hard not to perceive, sense or grasp," "requiring very little insight or reflection to perceive, recognize or comprehend," "easily understood," "requiring no thought to understand or analyze," or "so simple and clear as to be unmistakable." *Webster's Third New International Dictionary* 1559 (2002).

■ Here, the jury was instructed on the language in the statute defining "voluntary intoxication" and "sexual contact." *See* §§ 18–1–804(1), 18–3–401(4). With the exception of the alleged error in failing to advise the jury that voluntary intoxication can apply to sexual assault on a child, the instruction was correct, and defendant does not contend otherwise. Jury instructions

framed in the language of the statute are generally sufficient. *People v. Phillips,* 91 P.3d 476 (Colo.App.2004) (instruction on when deadly force is permitted in self-defense); *People v. Ellsworth,* 15 P.3d 1111 (Colo.App.2000) (elemental instruction).

The alleged error arises from the lack of awareness of the trial court, and apparently both trial counsel, of our supreme court's observation in *Moore.* The holding in *Moore* did not deal directly with the elements of sexual assault, but, instead, dealt with the definition of "sexual contact," a term used in the sexual assault statute. We are not aware of any authority that holds that the construction of a definition can modify the stated mens rea for an offense. Further, and perhaps more important, it was not until *Vigil* that the language in *Moore* was interpreted to permit the use of voluntary intoxication as a consideration in determining whether a defendant could form the specific intent necessary for sexual contact as an element of sexual assault. Here, the trial court did not, sua sponte, perceive that the supreme court's construction of the definition of "sexual contact" might alter the mens rea for sexual assault on a child. We conclude that that possibility was not so clear cut and obvious that the trial court should have considered it without the benefit of an objection.

Indeed, the granting of certiorari by the supreme court in *Vigil* on this issue casts some doubt whether the issue is yet settled.

Therefore, we conclude that any error was not obvious at the time of trial and, therefore, not plain.

## II.

■ Defendant next contends that contrary to the holding in *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the trial court improperly imposed a sentence within the aggravated range based on facts not found by the jury. We disagree.

At sentencing, the prosecutor informed the court that because defendant was on probation the night he broke into the victim's home, he was subject to aggravated range sentencing under § 18–1.3–401(8)(a)(III),

C.R.S.2005. Had defendant not been on probation, the presumptive sentencing range was four to twelve years for the burglary conviction, a class three felony, and one to three years for the attempted sexual assault on a child conviction, a class five felony. *See* § 18–1.3–401(1)(a)(V)(A), C.R.S.2005. The aggravated range is eight to twenty-four years for the burglary conviction and two to six years for attempted sexual assault. Section 18–1.3–401(8)(a)(III), C.R.S.2005.

Defendant was sentenced to ten years for the burglary conviction and two years for the attempted sexual assault conviction. Both sentences were within the presumptive range for the offenses. In both instances, the presumptive and aggravated ranges overlap, and in both instances the sentences are within the overlap. Even if the trial court indicated it would sentence in the aggravated range, the sentence imposed is also in the presumptive range. Therefore, *Blakely* does not apply.

### III.

■ Defendant next contends that the case should be remanded for resentencing because the trial court mistakenly believed that it had no discretion to impose concurrent sentences. We disagree.

At defendant's first sentencing hearing, the prosecutor told the trial court that consecutive sentences were required under § 18–1.3–1004(5), C.R.S.2005, which provides that any sex offender convicted of an additional crime arising out of the sex offense shall serve consecutive sentences. Yet, contrary to the prosecutor's argument, because defendant was convicted of a class five felony offense of attempted sexual assault on a child, he did not qualify as a sex offender under the statute. However, defense counsel argued that consecutive sentences were not appropriate because the attempted sexual assault sentence should merge into the burglary sentence. The trial court did not sentence defendant then and continued the sentencing hearing.

At the second hearing both parties reiterated their positions. The trial court then noted, "I considered the findings of the jury

on these two offenses. I have heard arguments of counsel ... [and] I have already considered some of the case law in consecutive versus concurrent sentencing." The trial court then sentenced defendant to ten years on the burglary conviction and two years on the attempted sexual assault conviction and stated, "I do find that these sentences should run consecutively .... I want to make clear that they will run consecutively."

A trial court has broad discretion in imposing sentences. *People v. Valencia–Alvarez*, 101 P.3d 1112 (Colo.App.2004). Because the trial court is more familiar with the defendant and the circumstances of the case, it is accorded wide latitude in its sentencing decisions on such matters, and its decisions will not be disturbed absent a clear abuse of discretion. *People v. Rivera–Bottzeck*, 119 P.3d 546 (Colo.App.2004).

As a general rule, when a defendant is convicted of multiple offenses, the sentencing court has discretion to impose consecutive or concurrent sentences. *People v. O'Dell*, 53 P.3d 655 (Colo.App.2001). In addition, a defendant has no constitutional right to concurrent rather than consecutive sentences. *United States v. White*, 240 F.3d 127 (2d Cir.2001). However, when criminal counts are based on the same act or series of acts arising from the same criminal episode and the evidence supporting the counts is identical, concurrent sentencing is required. *People v. Laurson*, 15 P.3d 791 (Colo.App.2000).

A remand for resentencing is appropriate where a trial court misapprehends the scope of its discretion. *People v. Willcoxon*, 80 P.3d 817 (Colo.App.2002). This rule applies where a trial court imposes consecutive sentences under the mistaken belief that it has no discretion to impose concurrent sentences. *People v. Smith*, 881 P.2d 385 (Colo.App. 1994).

Here, the trial court exercised and was well within its discretion to impose consecutive sentences. The trial court never indicated that it believed that consecutive sentences were required, and its request for counsel's views on the issue does not demonstrate otherwise. In fact, the trial court indicated that it had reviewed and considered the case

law pertaining to the issue of consecutive and concurrent sentencing.

Therefore, nothing in the record indicates that the trial court improperly imposed consecutive sentences.

The judgment and sentences are affirmed.

CARPARELLI and RUSSEL, JJ., concur.